IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEST LITTLE PROMOHOUSE IN TEXAS LLC, | § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | No. 3:14-cv-1824-BN |
| YANKEE PENNYSAVER, INC., ET AL., | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action arising from the alleged trademark infringement, unfair competition, and cybersquatting of Defendant Yankee Pennysaver, Inc. and its vice president, co-publisher, and 49% shareholder Steven Silver (together, "Defendants") through their use of internet domains including bestlittlepromohouse.com and bestlittlepromohouseinbrookfield.com. Defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer venue to the United States District Court for the District of Connecticut under 28 U.S.C. § 1404(a). *See* Dkt. No. 11. Plaintiff Best Little Promohouse in Texas, LLC ("Plaintiff") filed its response, *see* Dkt. No. 13, and Defendants filed a reply, *see* Dkt. No. 19.

For the reasons explained below, Defendants' Rule 12(b)(2) motion [Dkt. No. 11] is granted, and this action is dismissed without prejudice. The Court therefore need not reach Plaintiff's alternative request for transfer under 28 U.S.C. § 1404(a).

**Background**

Plaintiff alleges that Defendant Steven Silver, acting through Defendant Yankee Pennysaver, acquired confusingly similar domain names, including the internet domain names bestlittlepromohouse.com, bestlittlepromohousect.com, and bestlittlepromohouseinbrookfield.com, in order to "piggyback on the cleverness of [Plaintiff's] trademark in a hope to take a shortcut to similar success ... [and] an attempt to reach as many potential customers as possible, both within Texas and back in the defendants' home state of Connecticut." Dkt. No. 13 at 2; *see also* Dkt. No. 1 (asserting claims for trademark infringement, unfair competition, and cybersquatting).

Defendants seek dismissal for lack of personal jurisdiction or, in the alternative, transfer to the District of Connecticut. *See* Dkt. No. 11. They contend, based on Steven Silver's declaration, that the Court lacks both specific and general jurisdiction over Defendants because they lack sufficient minimum contacts with the State of Texas. *See id.* at 2-4; Dkt. No. 11-1 at 1-3. That is, Defendants argue that the complaint does not sufficiently establish personal jurisdiction because it alleges only "upon information and belief" that they do business in Texas, *see* Dkt. No. 11 at 3 (citing Dkt. No. 1 at 2), and Defendants further urge that the allegedly-infringing website is not interactive, only one sale has been made to a customer in Texas, Defendants have not otherwise conducted business in Texas, and Defendants have not purposely established minimum contacts in this state, *see* Dkt. No. 11-1.

**Legal Standards**

<u>Personal Jurisdiction</u>

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that this Court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter*, ___ F.3d ___, 2014 WL 4799716, at *2 (5th Cir. Sept. 26, 2014); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). If the Court decides the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction. *See Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 592 (5th Cir. 1999); *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir. 1994)

A federal district court may exercise personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 398 (5th Cir. 2009). Due process requires the satisfaction of two elements to exercise personal jurisdiction over a non-resident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on his part such that the nonresident could anticipate being haled into the courts of the forum state and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-78 (1985); *Johnston*, 523 F.3d at 609. The Due Process Clause ensures that persons have "fair warning that a particular activity may subject

[them] to the jurisdiction of a foreign sovereign." *Burger King,* 471 U.S. at 472 (internal quotation marks omitted). Personal jurisdiction must be assessed on an individual-defendant basis. *See Rush v. Savchuk,* 444 U.S. 320, 332 (1980).

To establish minimum contacts with the forum, a non-resident defendant must do some act by which he "purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 474-75 (internal quotation marks omitted). But the unilateral activity of one asserting a relationship with the non-resident defendant does not satisfy this requirement. *See id.* at 474; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417 (1984). In determining whether the exercise of jurisdiction is appropriate, the United States Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *See Quill Corp. v. North Dakota,* 504 U.S. 298, 307 (1992).

Two types of personal jurisdiction may be exercised over a non-resident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *See J.R. Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 871 (5th Cir. 2000). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas*

*Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "'First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State.'" *Id.* at 1122 (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citations omitted). Specific jurisdiction is a "claim-specific inquiry," so a plaintiff must establish specific jurisdiction for each claim asserted. *Dontos v. Vendomation NZ Ltd.,* ___ F. App'x ___, 2014 WL 4562853, at *4 (5th Cir. Sept. 16, 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.* 472 F.3d 266, 274 (5th Cir. 2006)).

General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales,* 466 U.S. at 415-16. The Supreme Court recently observed that the proper consideration when determining general jurisdiction is "whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman,* 134 S.Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011)) (alteration in original). The Supreme Court held that, as to a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Id.* at 760. It is,

therefore, "incredibly difficult" to establish general jurisdiction in a forum other than the place of incorporation or principal place of business. *Monkton Ins. Servs.,* 2014 WL 4799716, at *2. A nonresident that merely does business with Texas businesses or customers will not be subject to general jurisdiction here unless it also has a lasting physical presence in the state. *See Access Telecom, Inc. v. MCI Telecommunications Corp.,* 197 F.3d 694, 717 (5th Cir. 1999); *see also Johnston*, 523 F.3d at 614 (general jurisdiction not conferred simply by advertising within a state or traveling to the state at regular intervals).

Under both specific and general jurisdiction analyses, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King,* 471 U.S. at 474 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the non-resident defendant and the forum state. *See Jones v. Petty-Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1068 n.9 (5th Cir. 1992).

The maintenance of a passive website that does nothing more than advertise on the internet cannot, without additional contacts with the forum state, support personal jurisdiction over a non-resident. *See Revell v. Lidov,* 317 F.3d 467, 470 (5th Cir. 2002); *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 336 (5th Cir. 1999). Even an interactive

website, in itself, is insufficient to establish general jurisdiction where the website shows, at most, that a defendant conducts business with the forum State, not in the forum state. *See Monkton Ins. Servs.*, 2014 WL 4799716, at *3. When the underlying cause of action is based on an intentional tort, a single act by the defendant can be sufficient to establish personal jurisdiction if that act gives rise to the claim being asserted. *See Lewis v. Fresne,* 252 F.3d 352, 358-59 (5th Cir. 2001); *see also FCA Invs. Co. v. Baycorp Holdings, Ltd.,* 48 F. App'x 480 (table), 2002 WL 31049442, at *2 (5th Cir. 2002) (finding that in a claim for the intentional tort of fraud, a single phone call into the forum state was sufficient to establish personal jurisdiction where the content of that phone call was the subject matter of the fraud claim). But the existence of a contract alone is insufficient to confer personal jurisdiction over a nonresident defendant. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Similarly, "the exchange of communications ... in the course of developing and carrying out the contract [is] ... insufficient to constitute purposeful availment of the benefits and protections of Texas law." *Holt Oil & Gas Corp.*, 801 F.2d at 778.

<u>Jurisdictional Discovery</u>

When seeking discovery on personal jurisdiction, a plaintiff must make a "preliminary showing of jurisdiction" before being entitled to such discovery. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). The decision to allow jurisdictional discovery is within the district court's discretion. *See id.* "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would

serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 855 (5th Cir. 2000) (citation omitted). A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction. *See Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC,* No. 4:11-cv-629-A, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly*, 213 F.3d at 855). A court is entitled to deny leave to conduct jurisdictional discovery where the movant fails to specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction. *See id.*; *see also King v. Hawgwild Air, LLC,* No. 3:08-cv-153-L, 2008 WL 2620099, at *8 (N.D. Tex. June 27, 2008). A court may also deny jurisdictional discovery where the plaintiff only offers speculation as to jurisdiction and where the plaintiff is waging a "fishing expedition" into jurisdictional facts. *Combat Zone Corp. v. John/Jane Does 1-13,* No. 3:12-cv-3927-B, 2013 WL 230382, at *2 (N.D. Tex. Jan. 22, 2013) (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 402 (4th Cir. 2003)).

**Analysis**

<u>Personal Jurisdiction</u>

The Court finds that Plaintiff has failed to establish a *prima facie* case that specific jurisdiction exists over nonresidents Steven Silver and Yankee Pennysaver, Inc. in this lawsuit. Plaintiff has failed to establish that Defendants' suit-related conduct creates a substantial connection with Texas for purposes of specific jurisdiction. *See Walden*, 134 S. Ct. at 1121. Moreover, Plaintiff has neither pled nor

established the "continuous and systematic" contacts needed to support general jurisdiction. *See Helicopteros Nacionales,* 466 U.S. at 415-16.

Specific jurisdiction exists when a plaintiff's injuries arise out of the non-resident defendant's contacts with the forum state. *See Felch v. Transportes Lar-Mex SA DE CV,* 92 F.3d 320, 324 (5th Cir. 1996). That is, the defendant's suit-related conduct must create a substantial connection with the forum State. *See Walden,* 134 S. Ct. at 1121-22. A defendant does not have minimum contacts with a state to establish specific jurisdiction when the defendant does not have a physical presence in the state, it did not conduct business in the state, and the activities at issue in the lawsuit did not occur in Texas. *See Seiferth*, 472 F.3d at 272.

Accepting the allegations in Plaintiff's complaint as true and construing all factual conflicts in favor of the Plaintiff, as the Court must do, *see Wilson*, 20 F.3d at 648, the Court concludes that the trademark infringement, unfair competition, and cybersquatting alleged in Plaintiff's complaint did not arise from Defendants' contacts with Texas. Plaintiff alleges that it has been using the trademark of Best Little Promohouse in Texas, LLC in commerce in connection with the advertising and sale of promotional products and online retail store services featuring promotional products since at least February 1998. *See* Dkt. No. 1 at 3. Plaintiff has also submitted evidence that, in 2004, Silver, on behalf of Yankee Pennysaver, reached out to Plaintiff and began to acquire products. *See* Dkt. No. 13 at 1-2; Dkt. No. 13-2. Long after Plaintiff adopted, used, and applied to federally register its trademark, Defendants acquired various internet domains, such as bestlittlepromohouse.com and

bestlittlepromohouseinbrookfield.com, in connection with their competing online retail store, BestLittlePromohouse, which also features promotional products and other speciality merchandising services. *See id.* at 4. By doing so, Defendants allegedly sought to appropriate and trade on the goodwill and reputation of Plaintiff and its trademark and cause confusion, mistake, or deception and generally profit from "the vision of [Plaintiff's] originator, the dedication of its staff, the quality of its products, the distinctiveness of its logo, the effectiveness of its marketing and advertising, and – in no small part – the creativity and strength of its trademark." *Id.* at 4-5; Dkt. No. 13 at 1. In sum, Plaintiff contends that Defendants took affirmative steps by conducting business with Plaintiff in the State of Texas, thereby obtaining knowledge about Plaintiff's products and practices, and used that knowledge to establish a deceptively similar, competing websites. Through these websites, Defendants allegedly conduct business in Texas and seek to poach Plaintiff's Texas customers.

Defendants respond by asserting that Plaintiff's claims do not arise from this 2004 transaction since the complaint does not mention the purchase, the transaction has "no bearing" on whether Defendants' website infringes upon Plaintiff's trademark, and the unverified appendix exhibits do not contradict Silver's testimony that the websites in question have resulted in just one sale to a Texas customer and serves as a passive advertisement only. *See* Dkt. No. 19.

Even accepting Plaintiff's appendix exhibits as competent evidence, Plaintiff's construction of specific jurisdiction is too broad. Plaintiff does not contend – and its allegations do not suggest – that the trademark infringement, unfair competition, and

cybersquatting evidenced by the creation and use of internet domains bestlittlepromohouse.com, bestlittlepromohousect.com, and bestlittlepromohouseinbrookfield.com arose out of the 2004 interaction or any contact with Texas. That is, the suit-related conduct at issue here is the acquisition of confusingly similar domain names in order to "piggyback on the cleverness of [Plaintiff's] trademark in a hope to take a shortcut to similar success ... [and] an attempt to reach as many potential customers as possible, both within Texas and back in the defendants' home state of Connecticut." Dkt. No. 13 at 2; *see also* Dkt. No. 1. None of this conduct implicates the 2004 interaction between Plaintiff and Silver, nor does it arise out of contacts that Defendants themselves created with Texas. *See Walden*, 134 S. Ct. at 1121.

Defendants' alleged solicitations of Texas customers through its websites, too, do not establish specific jurisdiction. When specific jurisdiction is based on online interactions via an Internet website, the Fifth Circuit follows the sliding scale adopted in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *See Mink*, 190 F.3d at 336. *Zippo* requires the Court to assess the level of interactivity of the defendant's website and prescribes a separate course of action for each of the three categories of websites: where a website is nothing more than a passive advertisement, the court must decline to exercise personal jurisdiction; where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper; and where a website falls somewhere in between, "the exercise of jurisdiction is determined

by the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Mink*, 190 F.3d at 336 (interpreting *Zippo*).

Here, Plaintiff asserts that Defendants "purposefully solicited customers from Texas by providing multiple interactive websites accessible by Texas residents and targeted those same residents through advertising in Texas via various electronic media, including but not necessarily limited to multiple websites on the Internet, Facebook, and Twitter." Dkt. No. 13 at 4; Dkt. Nos. 13-3 & 13-14. The Court must look primarily to the interactivity of Defendants' websites to determine whether they have sufficient contacts with Texas. *See Mink,* 190 F.3d at 336-37. Here, Defendants provide evidence though Silver's affidavit that indicates that they maintain a website that posts information about its products and services but a prospective customer cannot complete a transaction online. *See* Dkt. No. 11-1 at 3-4. This does not classify the website as anything more than passive advertisement, which is not grounds for the exercise of personal jurisdiction. *See Mink*, 190 F.3d at 337; *see also Zippo,* 952 F. Supp. at 1124.

Even accepting Plaintiff's contention that the "How to Place an Order" section on Defendants' websites makes them interactive and place them in the middle of the *Zippo* spectrum, the nature and quality of the interaction between Defendants and Texas weighs heavily against finding specific jurisdiction. *See M3Girl Designs LLC v. Purple Mountain Sweaters*, No. 3:09-cv-2334-G, 2010 WL 3699983, at *7 (N.D. Tex. Sept. 13, 2010) (citing *Revell,* 317 F.3d at 470). At most, Plaintiff has established that the allegedly-infringing websites make possible the sale of products to Texas

consumers and permit the targeting of Plaintiff's customers – not that any such sales have been made or targeting has occurred. The sole evidence regarding sales from the allegedly-infringing websites is that there was one sale to a Texas resident, for $471.97, which was placed over the phone and processed entirely in Connecticut. *See* Dkt. No. 11-1 at 2. The lack of evidence of extensive sales to the forum state suggests that Defendants have not purposefully availed themselves of the benefits of conducting business in Texas. This attenuated contact with Texas is not sufficient or substantial enough for this Court to exercise personal jurisdiction in this case. *See M3Girl Designs LLC*, 2010 WL 3699983, at *7 (finding that evidence of interactive website's sale to one Texas customer, for approximately $600, did not confer specific jurisdiction).

The Court concludes that the conduct in 2004 by Defendants and their maintenance of websites accessible to Texas customers do not prove that Defendants purposely established the minimum contacts with Texas or that this Court's exercise of jurisdiction over the resulting lawsuit would be consistent with "fair play and substantial justice."

It does not appear that Plaintiff contends that general jurisdiction exists. That is, Plaintiff has not alleged any facts that, if true, would establish that Defendants were "at home" in the State of Texas or had a lasting physical presence here. *Goodyear Dunlop Tires*, 131 S.Ct. at 2854. There is no evidence before the Court that Defendants' contacts with Texas are continuous and systematic such that the Court may exercise general jurisdiction over an action against Defendants regardless of whether the action is related to Defendants' contact with the forum. *See Helicopetros Nacionales de*

*Colombia, S.A.*, 466 U.S. at 414-15. Accordingly, general jurisdiction has not been established.

Jurisdictional Discovery

In a footnote contained in its response to Defendants' Rule 12(b)(2) motion, Plaintiff states that,

> [a]t a minimum, if this Court is at all inclined to grant the defendants' motion to dismiss, it should first allow for limited discovery to explore the jurisdictional issue, including but not limited to the production of all of defendants' sales orders or invoices, a forensic examination of the computers operated by Mr. Silver and Yankee Pennysaver, and the deposition of Mr. Silver and employees of Yankee Pennysaver.

Dkt. No. 13 at 7 n.2. Defendants object to this request, contending that Plaintiff "has made only the most bare allegations of jurisdiction" and has failed to explain how such allegations could be supported by further discovery. Dkt. No. 19 at 4.

The Court concludes that Plaintiff has failed to establish its entitlement to jurisdictional discovery. Plaintiff does not in any way identify the facts expected to be obtained through discovery and how such information would support personal jurisdiction. Instead, Plaintiff simply contends that it seeks information "to explore the jurisdictional issue." Dkt. No. 13 at 7 n.2. While it is true that a plaintiff does not have a heavy burden to obtain jurisdictional discovery, *see Fielding*, 415 F.3d at 429, jurisdictional discovery need not be permitted unless the motion to dismiss raises issues of fact, *see Kelly*, 213 F.3d at 855. Here, Defendants contend that they have no contacts with Texas aside from the maintenance of passive websites and the sale of $471.97 in merchandise to a Texas customer through a telephone transaction manually

-14-

processed through Yankee Pennysaver's PayPal account. *See* Dkt. No. 11-1 at 2-3. Plaintiff does not dispute this claim. Instead, it requests broad discovery in order to determine whether any other evidence exists that personal jurisdiction is proper in Texas. *See* Dkt. No. 13 at 7 n.2. Such a request appears to be based on speculation that additional facts establishing jurisdiction may exist, if Plaintiff is provided the wide-ranging, extensive, and (in some respects) invasive discovery consisting of "production of all of defendants' sales orders or invoices, a forensic examination of the computers operated by Mr. Silver and Yankee Pennysaver, and the deposition of Mr. Silver and employees of Yankee Pennysaver." *Id.*

Plaintiff's demonstration of the specific facts that it expects to be revealed through jurisdictional discovery "is especially important where, as here, the defendant enters declarations into evidence specifically denying certain jurisdictional allegations." *Bell Helicopter Textron, Inc. v. American Eurocopter, LLC*, 729 F. Supp. 2d 789, 797-98 (N.D. Tex. 2010) (citation omitted). The Court need not allow a plaintiff to conduct a jurisdictional "fishing expedition" seeking facts to support a claim of personal jurisdiction. *Id.*

Plaintiff here identifies no specific facts that are in dispute and fails to explain how any information obtained would support personal jurisdiction. Plaintiff has therefore failed to adequately support its request for jurisdictional discovery. *See Northview Christian Church, Inc. v. Monolithic Constructors, Inc.*, No. 3:09-cv-655-M, 2010 WL 2812849, at *3 (N.D. Tex. July 13, 2010) (denying request for jurisdictional discovery where a plaintiff "does not describe the specific discovery it requests, what

facts it hopes to obtain from such discovery, or how it would produce information that would support personal jurisdiction over the" defendants). Accordingly, Plaintiff's request is denied.

<u>Transfer Under 28 U.S.C. § 1404(a)</u>

Because the Court has found that Plaintiff has not established personal jurisdiction in Texas, this lawsuit will be dismissed without prejudice. Accordingly, the Court need not address Defendants' alternative request for transfer of the case to the District of Connecticut under 28 U.S.C. § 1404(a).

## Conclusion

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. No. 11] is GRANTED. This case will be dismissed without prejudice by a separately filed judgment.

SO ORDERED.

DATED: October 27, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE